UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| CID SOLANO ARTECONA, JR.,<br>TDCJ No. ID No. 1378482, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.<br>1:13-CV-00033-BL |
| DR. DENISE DESHIELDS, *et al.*, | § § § § | ECF |
| Defendants. | § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cid Solano Artecona, Jr., proceeding *pro se*, has filed a civil rights action pursuant 42 U.S.C. § 1983. Artecona was confined at all times relevant to the claims in his complaint at the French Robertson Unit of the Texas Department of Criminal Justice ("TDCJ"). Defendants in this case include Texas Tech University Health Service Correctional Managed Health Care Dr. Denise DeShields, Robertson Unit Health Administrator Dr. Dennis Melton, and Robertson Unit Senior Warden Eddie Wheeler. Artecona consented to trial by U.S. Magistrate Judge, (Doc. 9), at his evidentiary hearing, (Docs. 8, 10), held pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

### I. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, (Doc. 1), as supplemented by his testimony at the evidentiary hearing, Artecona alleges "deliberate indifference, malice, and medical malpractice" as follows:

On May 31, 2010, Artecona injured his ACL and other parts of his knee while playing volleyball at the Robertson Unit. He was provided with a leg brace, crutches, analgesics, and work restrictions reflecting his injury. In May 2011, after various complaints to physicians' assistants at the Robertson Unit, he received a new knee brace at the Montford Unit hospital.

Around this time, he received an MRI which revealed the injury's severity; in consequence, he was referred to orthopedists for an exam on August 25, 2011. He was then referred by Dr. Henry, one of the orthopedists, for surgery. Not having received this surgery, Artecona wrote I-60 forms to Defendant Dr. Dennis Melton, which were processed via nurse sick-call rather than being replied to directly by Dr. Melton.

Artecona filed a Step 1 grievance on February 2, 2012, to which he received a reply on April 19, 2012. He filed a Step 2 grievance requesting the recommended surgery on May 2, 2012, and received a reply on August 1, 2012. In his Step 2 grievance, (Doc. 1 at 7), Artecona complains that Defendant Dr. Denise DeShields, the Texas Tech University Health Service ("TTUHSC") Correctional Managed Health Care Administrator, has not approved him for knee surgery. The reply, (Doc. 1 at 8), to Artecona's Step 2 grievance states that an authorization request had been initiated for knee surgery at University Medical Center, but that in September 2011 this request was cancelled by the Texas Tech University Health Service Correctional Managed Health Care Executive Director. The reply goes on to state that Artecona was evaluated and treated for knee pain on June 4, 2012, and that the question of whether to re-refer Artecona for surgery had been "referred to the TTUHSC Administrator [i.e., Dr. DeShields] for further review."

After various further appointments for evaluation and treatment of his knee injury with physicians' assistant Bennett at the Roberston Unit, Artecona received x-ray and MRI exams at Hendricks Hospital in Abilene on October 4, 2012. He underwent knee surgery on November 4, 2012. He spent the weekend at the Robertson Unit infirmary, and then began three weeks of rehabilitation at the Montford Unit on November 8, 2012, which included three brief visits by a physical therapist. After Artecona's discharge on November 23, 2012, he was not allowed crutches because he was in administrative segregation. Since his return to the Robertson Unit, Artecona has

seen physicians' assistant Bennett multiple times, and has seen a Dr. Badalyk, who has taken further x-rays and ordered a new knee brace for Artecona in order to treat knee tears he suffered while performing his prescribed physical therapy exercises.

Artecona seeks the payment of his court costs, and $50,000 compensation for pain and suffering. (Doc. 1).

## II. ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). A "complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the Stewart the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears*, 766 F.2d 179 (use of an evidentiary hearing).

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

## A. Claims of Inadequate Medical Care and Deliberate Indifference

In the context of medical care, or lack of care, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain or care repugnant to the conscience of mankind. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). Not every claim of inadequate or improper medical treatment is a violation of the Constitution. *Estelle*, 429 U.S. at 105-07. In order to state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. The deliberate indifference requirement is more than mere negligence in failing to supply medical treatment. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (citing *Estelle*, 429 U.S. at 105). Neither "'negligence, neglect or medical malpractice'" gives rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson*, 759 F.2d at 1238). "[N]egligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action." *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). A negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. While inadequate treatment "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy,*

4

174 F.3d 530, 534 (5th Cir. 1999). Thus, mere "negligence is insufficient to support a finding of liability"; a plaintiff must show that the Defendants were "deliberately indifferent." *Adames*, 331 F.3d at 514.

Deliberate indifference is also more than disagreement between patient and doctor as to the appropriate treatment, except in exceptional circumstances. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (absent exceptional circumstances, a prisoner's disagreement with his medical treatment is not actionable under § 1983). Moreover, "[u]nsuccessful medical treatment does not give rise to a § 1983 cause of action." *Varnado*, 920 F.2d at 321 (citing *Johnson*, 759 F.2d at 1238); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Rather, to show deliberate indifference to his serious medical needs, a plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos*, 41 F.3d at 235 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993)).

Here, Artecona's complaint and testimony indicate that he has received medical treatment for his knee injury. Accepting his allegations as true, his claims of inadequate medical care and deliberate indifference amount at most to a disagreement between patient and medical professional as to appropriate treatment, which is not actionable under § 1983. *Banuelos*, 41 F.3d at 235. Accordingly, Artecona's claims against all Defendants for inadequate medical treatment and deliberate indifference lack an arguable basis in law or fact and the court finds that any such claims should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

**B. Retaliation Claims**

Artecona's allegation that Defendants' actions resulted from "malice" may be broadly construed by this court, in the interests of justice, as setting fort a claim of retaliation. In order to sustain a § 1983 retaliation claim, a plaintiff must establish: (1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods,* 60 F.3d at 1166). The inmate must allege more than his personal belief that he is the victim of retaliation. *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999). Mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods,* 60 F.3d at 1166. A plaintiff is required to "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions. *Id.* at 1166 (citing *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir. 1994). To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims.

Artecona's factual allegations, accepted as true, fail to demonstrate that the requirements of a retaliation claim have been met. Lacking an arguable basis in law or fact, his retaliation claim should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

6

C. **Supervisory Capacity Claims**

Artecona alleges that Defendants Dr. DeShields, Dr. Melton, and Warden Wheeler are liable at least in part because of their positions of leadership at the unit. In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in a constitutional violation or whose acts were causally connected to the constitutional violation alleged. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F. 2d 381, 382 (5th Cir. 1983). Prison officials "cannot be automatically held liable for the errors of their subordinates." *Adames v. Perez*, 331 F.3d 508, 513 (5th Cir. 2003). Supervisory officials may be held liable only if: "(i) they affirmatively participate in the acts that cause constitutional deprivations; or (ii) [they] implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.*, 977 F. 2d 924, 929 (5th Cir. 1992). Vicarious liability does not apply to § 1983 claims. *Pierce v. Tex. Dep't of Crim. Justice, Institutional Div.*, 37 F. 2d 1146, 1150 (5th Cir. 1994). Plaintiff's allegations fail to demonstrate any unconstitutional policy that caused an injury to Plaintiff.

Plaintiff constitutional claims against Defendants in their supervisory capacities thus lack an arguable basis in law or fact and should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

**D. Official Capacity Claims**

It is unclear if Artecona is suing Defendants only in their personal, or also in their official capacities. Insofar as he brings suit against Defendants in their official capacities, the court notes that the Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875

n.9 (5th Cir. 1991)). A state's sovereign immunity is not waived for claims pursuant to § 1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)). Moreover, the State of Texas has not consented to this suit. *Id.* (citing *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984)). Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). The Eleventh Amendment immunity thus extends to TDCJ officers acting in their official capacity. *Aguilar*, 160 F.3d at 1054.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity noting that a state cannot confer authority on its officers to violate the Constitution or federal law. *See Aguilar*, 160 F.3d at 1054. However, under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)).

Accordingly, insofar as Artecona's claims are brought against Defendants in their official capacities, such claims should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### III. CONCLUSION

The court finds that Plaintiff has failed to state a cognizable constitutional claim against Defendants in either their official or individual capacities.

**IT IS, THEREFORE, ORDERED** that all such claim(s) against any Defendant(s) are **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Judgment shall be entered accordingly. This dismissal shall count as a qualifying dismissal under 28 U.S.C. § 1915(g) and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996). Dismissal of

this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

Any pending motions are **DENIED**.

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to any attorney of record by first class mail or electronic notification.

**SO ORDERED.**

DATED this 26th day of July, 2013.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**